HANDY *vs.* THE STATE, use of TOWNSEND.—June, 1826.

Where an instrument of writing purports to have been attested by a person, whose name is subscribed as a witness, it must be proved by the testimony of such witness, unless he cannot be procured, by reason of his absence, death, interest, or other disqualification, subsequent to the attestation; in which case evidence may be given of his handwriting, and it is also usual to prove the signature of the contracting party.

The party is not concluded by the testimony of the subscribing witness; as, if he denies his attestation, it may be proved by other witnesses; or if he denies the due execution of the instrument, other testimony may be resorted to, to prove it, &c.

So where it can be proved, that the name of a person appearing as a subscribing witness to an instrument of writing was written by another without his knowledge or assent, the party may be permitted to prove it, and in such case, he is not to be considered as an attesting witness—it stands as an instrument without an attesting witness, and subject to be proved by any other admissible evidence.

In an action on a testamentary bond, brought at the instance of the only daughter of the deceased, to recover two thirds of what remained in the hands of the executrix of the personal estate of her father, after payment of debts, &c. the will of the deceased was offered in evidence, with the endorsements thereon, stating that the will was proved on the 25th of November 1800. Also an endorsement of the same date, every line and word of which, except the date, was cancelled and obliterated by a pen being drawn through each line, purporting to be a renunciation (in sub-

stance such as is required by the act of 1798, *ch.* 101, *sub ch* 13, *s.* 2,) executed by the widow of the testator, by making her mark, and also purporting to be attested by J B R, the register of wills, both whose names, together with the mark, being in like manner obliterated.ꞏ Also another endorsement, purporting to be a certificate by J B R, "the register of wills, that on the same day A T, the widow of the deceased, appeared and quitted claim to the several bequests and devises made to her in the will of her husband, and elected in lieu thereof her dower or third part of his estate, both real and personal. There was proof that A T was an illiterate woman, and could not write. It was also proved by J B R that he did not see A T put her mark to the said written renunciation, and that his name signed to it as a subscribing witness was not in his handwriting, but in the handwriting of E W, who was then his deputy, and is since dead, and that the whole writing was in the hand of E W, who was in the habit, but without authority, of signing his, J B R's name, as a witness to other than official papers.—*Held*, that the obliterated paper, purporting to be a renunciation of A T, was not admissible in evidence. *Held* also, that the writing, purporting to be a certificate by the register of wills, that A T did, on the 25th of November 1800, renounce the bequest to her husband's will, was an act not required or authorised by law, and was not admissible in evidence to prove the execution of a renunciation by her.

Though illegal evidence is received by the inferior court without objection, it may still be rejected by the appellate court.

If an instrument of writing be mutilated, it is *prima facie* evidence of cancellation; though proof may be admitted to show that the mutilation was by accident or fraud.

In this action it was admitted that no guardian had been appointed for the equitable plaintiff during her minority, which expired on the 10th of March 1814, when she arrived at the age of 16 years—*Held* by the county court, that she was not entitled to interest on the sum claimed by her except from that period.

APPEAL from *Worcester* County Court. Debt upon the testamentary bond, executed on the 27th of November 1800, by *Ann Townsend*, as the executrix of *Levin Townsend*, with *Thomas R. Handy*, (the defendant and now appellant,) and *James Atkinson*, her sureties. The defendant pleaded general performance. The replication stated that *Levin Townsend* by his will, amongst other things, bequeathed to his wife *Ann* all his personal estate during her widowhood, and at the expiration of her widowhood, that all his personal estate "should be equally divided between his two daughters *Nancy* and *Sarah*, or either of them dying, all and each part to the surviving sister, except an heir of either's body, then and in that case to the children of the above mentioned daughters." That *Ann*, the widow, after the death of *Levin*, within 90 days after the

authentication and probat of the will, delivered to the orphans court a written renunciation of any bequest or devise made to her by the said will, and did elect to take in lieu thereof her dower or legal share of her said husband's estate, which entitled her by law to one third part of the clear balance of her husband's personal estate. That on the 4th of September 1801, in the life of the said *Ann*, who is since dead, there remained in her hands, as executrix of the said *Levin*, of the clear estate of the said *Levin*, as settled by her after all payments, allowances, and her thirds deducted, the sum of $444 09, as by her account, passed and allowed by the orphans court. And that *Sally Townsend*, at whose instance and for whose use this action was brought, and who is the same *Sally* or *Sarah* mentioned in the said will, and as such entitled to the clear estate of her father by virtue of his will, and by reason of her having survived her said sister *Nancy*, who died an infant in the lifetime of her father, and without leaving issue, or ever having had issue. Breach, the nonpayment of the said sum of $444 09, &c. The rejoinder stated that *Ann*, the widow, did not, within 90 days or at any time after the authentication and probat of the will, deliver to the orphans court a written renunciation of any bequest or devise made to her by the will, and elect to take in lieu thereof her dower or legal share of her husband's estate. Issue joined.

1. At the trial the plaintiff offered in evidence the bond upon which the action was brought, and the will of *Levin Townsend*, dated the 24th of September 1800, bequeathing *(inter alia)* as follows: "*Item*. The lot on which I now live, and all the rest of my property, I leave unto my beloved wife *Ann Townsend*, during her widowhood. At the expiration of *each*, my will is, the property above mentioned should be equally divided between my two daughters, *Nancy* and *Sarah*, or either of them dying, all and each part to the surviving sister, except an heir of either's body, then in that case to the children of the above mentioned daughters;" and he appointed his wife *Ann* his executrix, and *John Cottingham* his executor. The will was proved by *Ann*, the executrix, and by the subscribing witnesses, on the 25th of November 1800, and letters

testamentary, which were offered in evidence, were granted to *Ann*, the executrix, on the 27th of November 1800. The plaintiff then offered in evidence the following acknowledgment of the renunciation of *Ann Townsend*, the executrix, purporting to have been made before *James B. Robins*, register of wills for *Worcester* county, viz. "*Worcester* county, set. The 25th day of Novr. 1800, then came *Ann Townsend*, the widow of *Levin Townsend*, late of *Worcester* county, deceased, and quitted claim to the several bequests and devises made to her in the will of her said husband, deceased, and elected in lieu thereof her dower or third part of the deceased's estate, both real and personal.

Before, *James B. Robins*, Reg. W. W. C."

The plaintiff then offered the following paper in evidence, after proving that it was an exact copy from the original endorsement on the said will: "Novr. 25th 1800, came *Ann Townsend*, & (a) [Novr. 25th 1800, and *Worcester* county, set. hereby I hereby certify, that she did hereby renounce ally her right and title to my said husband *Levin Townsend* will, and electietieth in lieu thereof to take my third part of my said husband estate, both real and personal.

her

*Ann* X *Townsend*

mark

Test. *James B. Robins*, Reg. W. W. C."

The plaintiff proved also, that the said *Ann Townsend* was an illiterate woman, and could not write. The plaintiff then produced the original will, and called *James B. Robins*, the subscribing witness to the last mentioned endorsement, who testified that he did not see *Ann Townsend* put her mark to the said paper, and that his name signed to it as a witness is not in his handwriting; but proved that a certain *Ezekiel Wise* was his deputy, and that the whole writing was in the handwriting of *Wise*, who is dead. And also proved that he *Robins* was the register of wills of said county, and that

(a) The part here in crotchets was all crossed and obliterated, and where blanks are left the words were not intelligible.

*Wise,* his deputy, was authorised to sign his *Robins's* name to all official acts, but was not deputed to sign his name as a witness to other papers; but that he *Wise* was in the habit of doing so. The defendant on his part objected then to the said paper, purporting to be a renunciation, going to the jury as evidence. But the Court, [*Robins* and *Whittington,* A. J.] overruled the objection, and permitted the paper endorsement last mentioned to go to the jury. The defendant excepted.

2. It having been admitted that no guardian had been appointed or existed for *Sally Townsend,* the equitable plaintiff, during her minority, which expired on the 10th of March 1814, at which time she arrived at the age of sixteen years, the defendant prayed the court to direct the jury, that the plaintiff could not recover interest on the sum claimed by her but from that period. This direction the Court, [*Martin,* Ch. J. and *Robins,* A. J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against the defendant, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, STEPHEN, ARCHER, and DORSEY, J. by

*Wilson* and *A. Spence,* for the Appellant; and by
*J. Bayly* and *Tingle,* for the Appellee.

BUCHANAN, Ch. J. delivered the opinion of the court. By the act of 1798, *ch.* 101, *sub ch.* 13, *s.* 2, it is provided that a widow should be barred of her right of dower in the land, or share in the personal estate of her husband, by any devise to her of land, or any estate therein, or bequest of personal property, in his will, unless within ninety days after the authentication or probat of the will she shall deliver or transmit to the court, where such authentication or probat hath been made, a written renunciation in the form therein prescribed, or to the same effect.

On the 24th of September, 1800, *Levin Townsend* made his will, in which he bequeathed the whole of his property to his wife *Ann Townsend,* during her widowhood, and after, to his two daughters *Nancy* and *Sarah,* and the survivor, &c. and ap-

pointed his wife his executrix, who executed and filed her bond according to law, in the proper office, with *Thomas R. Handy*, the appellant, as one of her sureties, and took out letters testamentary. *Nancy Townsend* died in the lifetime of her father, without having ever had any issue; and this suit was instituted on the testamentary bond of *Ann Townsend*, the executrix, who was at that time dead, against the appellant *Thomas R. Handy*, one of her sureties, at the instance and for the use of *Sarah Townsend*, the surviving daughter of *Levin Townsend*, to recover two-thirds of what remained in the hands of *Ann Townsend*, of the clear personal estate of *Levin Townsend*, after payment of all demands, &c. against the estate, and a final settlement in the orphans court.

The appellant, who was defendant below, pleaded general performance of the condition of the bond by *Ann Townsend*, the executrix; and the replication, after protesting that *Ann Townsend* had not performed, &c. all that was required of her to be performed by the condition of the bond, &c. alleges, *inter alia*, that she did, within ninety days after the authentication and probat of the will of *Levin Townsend*, deliver to the orphans court of *Worcester* county, where the authentication and probat were made, a written renunciation of the bequest made to her in the said will, and election to take in lieu thereof her dower or legal share of her husband's estate, whereby she became entitled by law to only one third part of the clear balance of his personal estate. On this allegation in the replication issue was joined. On the back of the will is an endorsement by the register, that on the 25th of November, in the year 1800, *Ann Townsend* came and made oath that it was the true and whole will of *Levin Townsend* that had come to her hands or possession, and that she did not know of any other. Immediately following is also an endorsement of the same date, every line and word of which, except the date, is cancelled and obliterated by a pen being drawn through each, purporting to be a renunciation, (in substance such as is required by the act of 1798, *ch.* 101, *sub ch.* 13, *s.* 2,) executed by *Ann Townsend*, by making her mark, and also purporting to be attested by *James B. Robins*, the then register of wills, both whose names,

together with the mark, being also in like manner obliterated. Then follows another endorsement, purporting to be a certificate by *James B. Robins,* the register of wills, that on the same day, (the 25th of November 1800,) *Ann Townsend* appeared and quitted claim to the several bequests and devises made to her in the will of her husband, and elected in lieu thereof her dower or third part of his estate, both real and personal. After which, and as of the same date, is the probat, also endorsed on the back of the will.

At the trial of the cause, the will, and the endorsement purporting to be a certificate by the register of wills, that *Ann Townsend* had renounced the bequest to her by her deceased husband in his will, having been first given in evidence, as appears by the statement in the bill of exceptions, the obliterated endorsement, purporting to be a written renunciation executed by *Ann Townsend* by making her mark, was offered in evidence, accompanied by proof, on the part of the appellee, who was plaintiff below, that *Ann Townsend* was an illiterate woman, and could not write; and also by the testimony of *James B. Robins,* who was sworn on the part of the appellee, that he did not see *Ann Townsend* put her mark thereto, and that his name, signed to it as a subscribing witness, was not in his handwriting, but in the handwriting of *Ezekiel Wise,* who was then his deputy, but is since dead; and that the whole writing was in the hand of *Wise,* who was in the habit, but without authority, of signing his name as a witness to other than official papers.

The reading of this obliterated paper in evidence to the jury, was objected to on the part of the appellant, (the defendant below,) but the court, before whom the cause was tried, overruled the objection, and permitted it to go to the jury; and the question presented to this court for decision is, whether it ought to have been so admitted? And it seems to us that it ought not.

When an instrument of writing is produced, which purports to have been attested by one, whose name is subscribed as a witness, the law requires it to be proved by the testimony of such subscribing witness, and will not dispense with such proof, unless it can be shown that the testimony of the

subscribing witness cannot be procured, by reason of his ab-
sence, death, interest, or other disqualification, arising subse-
quent to the attestation; in which case evidence may be given
of the handwriting of such subscribing witness; in addition to
which it is also usual to prove the signature of the party. And
this strictness, in relation to a subscribing witness, is observed
on the ground, that the parties, by selecting him as a witness,
have agreed to rely upon his testimony in relation to the ex-
ecution of the instrument, and the circumstances attending it,
and because he is supposed to have a knowledge of facts and
circumstances which are unknown to others.

But although a subscribing witness must be called, except
where it satisfactorily appears that his testimony cannot be had,
yet the party is not concluded by his testimony; as, if he denies
his attestation, it may be proved by other witnesses; or if he
denies the due execution of the instrument, other testimony
may be resorted to, to prove it, &c.

So, where it can be proved, that the name of a person appear-
ing as a subscribing witness to an instrument of writing, was
written by another, without his knowledge or assent, the party
may be permitted to prove it, and in such case, he is not to be
considered as an attesting witness.

In this case *James B. Robins,* whose name appears as a sub-
scribing witness, having proved that he did not see *Ann Town-
send* make her mark to the paper in question, and that his name
signed to it as a witness, was not in his handwriting, it stood
as an instrument without an attesting witness, and subject to be
proved by any other admissible evidence. Was there any other
admissible evidence then offered to prove its due execution?
If there was, we have not been able to discover it embodied in
the first bill of exceptions. Surely the proof by *James B. Ro-
bins,* that the whole of it was in the handwriting of *Ezekiel
Wise,* his deputy, who was dead at the time of the trial, fur-
nishes no such evidence; nor affords the slightest ground of
presumption that it was executed by *Ann Townsend;* if it did,
there would not be much difficulty in authenticating any forged
instrument, purporting to have been executed by making a
mark, after the death of him by whom it was procured to be
written, or supposed to be written. This remark is not made

under any impression that *Wise* intended to commit a forgery, but only on account of the general principle.    Nor does it derive any aid from the circumstance that *Wise* was in the habit of improperly subscribing the name of *James B. Robins* as a witness to other than official acts, and cannot be favourably distinguished from any other instrument, not written by the party by whom it purports to have been executed, but must stand on the same footing, and be proved only in the same way.

The writing, purporting to be a certificate by the register of wills, that *Ann Townsend* did, on the 25th of November 1800, renounce the bequest to her in her husband's will, is an act not required, or authorised by law, and ought not to have been admitted in evidence to prove the execution, by her, of the instrument purporting to be her written renunciation.    It stands upon no higher ground then than the mere declarations of a third person, which, except when they relate to matters that may be proved by hearsay evidence, such as pedigree, boundaries, &c. are wholly inadmissible, whether they be reduced to writing or not; and being inadmissible, this case is to be considered as if that certificate had not been used in evidence, and was not now in the record, on the authority of the case of *Gittings's Lessee vs. Hall*, 1 *Harr. & Johns.* 14, in which the former court of appeals reversed the decision of the general court, on the ground that a deed, which was read in evidence without objection, as a link in a chain of title to land, appeared to be defectively executed, and was not therefore legally admissible in evidence; which principle was also recognized by this court in the case of *Whittington vs. Farmers Bank of Somerset and Worcester*, 5 *Harr. & Johns.* 489, and 6 *Harr. & Johns.* 548, in relation to the admission in evidence of a protest of a promissory note.    And stripped of that certificate, what is there in the record affording the semblance of evidence that *Ann Townsend* executed the cancelled instrument purporting to be her renunciation, or even laying any foundation for such a presumption?    But it has with much ingenuity been contended, that the certificate in question was a part of the *res gesta*, and therefore admissible.    But whether evidence be *admissible* or not, is always a question for the court to decide; and before it can be admitted, on the ground

that it was a part of the *res gesta*, it must appear to the court to have been so. Now, in this case there is nothing to show that that certificate was a part of the *res gesta*, it has no direct reference to the paper objected to, nor is there any thing to show that it has any relation to it. Indeed, if that instrument, supposing it to have been ever executed, was cancelled before the certificate was written, it was not a renunciation, and the certificate could not have related to it. It does not fall within the principle that admits entries and declarations to be given in evidence as a part of the *res gesta*.

But conceding that having been admitted, it must now be treated as constituting a part of the evidence in the case, it cannot be considered as affording any the slightest proof of the due execution of the instrument attempted to be set up as the renunciation of *Ann Townsend*. Until it was lodged in the office, it could not operate as her renunciation, and was liable to be cancelled at her pleasure.

If it was in fact duly executed and lodged in the office, it was her renunciation perfectly without her control, and could not have been legally cancelled by any body. And as the certificate could not have related to that paper, if it had been before cancelled, and not lodged in the office, seeing that it purports to speak of a subsisting renunciation; so neither can it be taken to relate to it as a duly executed paper lodged in the office, without supposing it to have been obliterated by the officer or his agent, and thus supposing him to have committed an offence, for which he deserved to be punished. Not the slightest presumptive evidence, therefore, of the due execution by *Ann Townsend* of that paper, is furnished by the certificate of the register.

It is a well established rule, that if an instrument of writing be mutilated, it is *prima facie* evidence of cancellation; though proof may be admitted to show that it was done by accident, or effected by fraud, &c. In this case the instrument attempted to be set up is obliterated, and no evidence appears in the record to show that it was done by accident or fraud, or how it was effected; the condition, therefore, in which it appears, is *prima facie* evidence that it was regularly cancelled;

and it ought not, in our opinion, to have been permitted to go to the jury.

JUDGMENT REVERSED.